OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Tri County Distributing, Inc., Appellee, v. Canandaigua Wine
Company, Inc. et al., Appellants.
[Cite as Tri County Distributing, Inc. v. Canandaigua Wine Co.
(1993),       Ohio St.3d      .]
Commercial transactions -- Alcoholic beverages franchise not
     created by operation of law pursuant to R.C. 1333.83
     through the mere existence of a written contract between a
     manufacturer and distributor of such products, where the
     contract disclaims any intention to create such a
     relationship and the contract term is for less than six
     months.
     (No. 92-1479 -- Submitted September 14, 1993 -- Decided
December 29, 1993.)
     Appeal from the Court of Appeals for Mahoning County, No.
92 C.A. 37.
     Plaintiff-appellee, Tri County Distributing, Inc., is a
wholesale distributor of alcoholic and nonalcoholic beverages.
For a period of years, according to appellee's complaint,
appellee possessed the right, pursuant to a franchise
relationship with Guild Wineries and Distilleries ("Guild"), a
California nonprofit agricultural cooperative, to market and
distribute products bearing the Cook's Wines, Cook's Sparkling
Wines, Chase-Limogere, Cribari Wines, Dunnewood Wines and
Vintner's Choice labels in Mahoning, Columbiana, Trumbull and
Ashtabula Counties.
     On August 2, 1991, defendant-appellant Canandaigua Wine
Company, Inc. ("Canandaigua"), a Delaware corporation with its
principal place of business in Canandaigua, New York, entered
into a purchase agreement with Guild whereby the product line
previously sold by Guild would be marketed by Canandaigua.  The
agreement provided in relevant part:
     "Section 10.12 Distributor Notification.  It is
specifically agreed and understood by the parties hereto that
as a condition to the closing of the transactions contemplated
hereby, Buyer [Canandaigua], for its own purposes *** agrees to
notify on or prior to Closing the Distributors listed in
Disclosure Schedule 10.12 that they will not be appointed as
distributors for the Buyer and their Distribution Arrangements

will not be assumed by Buyer.  Buyer hereby agrees *** to indemnify and hold Seller [Guild] and its directors, officers, employees, members, agents, successors and assigns harmless from, against and in respect of any and all liability arising from or related to the Distributors and Distribution Arrangements referenced in this Section 10.12 and the notification of such Distributors as provided herein." (Emphasis added.)

The disclosure schedule provided as follows:

"DISCLOSURE SCHEDULE 10.12

"Distributor Discontinuation Notification

"All Seller's Distributors in the following states:

"1.    Missouri
"2.    Wisconsin
"3.    Arizona
"4.    Maryland
"5.    Ohio
"6.    Nevada
"7.    Idaho
"8.    Washington"  (Emphasis added.)

Pursuant to the purchase agreement, Canandaigua notified appellee regarding its acquisition of Guild.  On September 25, 1991, Canandaigua, sent the following letter to appellee:

"Gentlemen/Madames:

"This letter is to advise you that the Canandaigua Wine Company, Inc. has acquired certain of the assets of Guild Wineries and Distilleries including the brands previously produced and distributed by Guild.  Our Sales Department is currently in the process of reviewing the market conditions in the State of Ohio and will, during this interim review period, continue to make the Guild brands you currently carry available to you on an interim order-by-order basis.

"Any orders for products you wish to place during the interim review period will be subject to the enclosed 'Terms and Conditions of Sale.'  In addition, it is understood that (i) for any order placed, Canandaigua reserves the right, in its sole and absolute discretion, to accept or reject the order and (ii) any acceptance or shipment by Canandaigua of such order shall not give rise or amount to a manufacturer-distributor or franchisor-franchisee relationship under Ohio Revised Code { 1333.82 et seq.

"If you accept the terms of this letter and the enclosed Terms and Conditions of Sale, please sign the additional enclosed executed copies of these documents and return them to us via any overnight delivery service.  We will not be able to process any orders from you until we receive signed documents indicating your acceptance.

"Any rights to purchase any Guild brands conferred by this letter will either (i) expire on the earlier of six months or written notice from Canandaigua discontinuing such rights or (ii) be superseded by a written appointment letter and/or distribution agreement."  (Emphasis added.)

The document accompanying the letter provided in relevant part:

"CANANDAIGUA WINE COMPANY

"TERMS AND CONDITIONS OF SALE

"1.  DEFINITIONS.

"(a)  The term 'Products' as used herein shall mean the following products:

"Cook's wines, Cribari wines

"(b)  The term 'Territory' as used herein shall mean the following geographic areas where Distributor shall be responsible for the sale and distribution of the Products:

"Counties of Trumbull, Columbiana and Mahoning

"***

"3.  TERMS OF SALE.  The Company agrees to sell to Distributor and Distributor agrees to buy from the Company Products at such prices and on such terms and conditions as will be determined from time to time by Company.  All orders of products received by Canandaigua Wine Company, Inc. ('the Company') from Distributor are subject to acceptance in writing by the Company and all returns of the Products may be made only after the prior written approval of the Company.  The Company will endeavor to fill the accepted orders subject to the availability of the Products, the demand of other distributors, the inventory on hand of Distributor and subject to delays caused by government orders or requirements, transportation conditions, labor or material shortages, strikes, labor disputes, fires or any other cause beyond the Company's control.  The Distributor hereby expressly releases the Company from all liabilities for any loss or damage arising from the failure of the Company to fill any orders of Distributor.

"***

"8.  MISCELLANEOUS.

"(a)  Construction.  This document and the understanding between the parties shall be construed and enforced under the laws of the State of New York.  The Distributor specifically consents to personal jurisdiction in the federal and state courts located in the State of New York and to service of process consistent with the laws of New York.  The parties hereby designate the Counties of Monroe or Ontario in the State of New York as the place of trial for any action or proceeding arising out of or in connection with this document or the understanding between the parties."  (Emphasis added.)

Appellee's vice-president signed the agreement on October 1, 1991.

On January 31, 1992, Canandaigua notified appellee by letter that appellee's distribution territory for the former Guild products had been changed.  The letter and attachments thereto provided:

"This is to advise you that Canandaigua Wine Company is appointing Tri-County Distributing effective March 1, 1992, as its wholesale distributor for Cook's Wines, Cook's Sparkling Wines, Chase-Limogere, Cribari Wines, Vintner's Choice and Dunnewood for your assigned territory subject to your agreeing to the terms of the enclosed distributor agreement.

"Please sign both contracts and return them both to Canandaigua Wine Company, attention:  Joyce MacKay, and we will return an executed copy to you for your records.

"If you have any questions, please feel free to call."

"SCHEDULE A

"PRODUCTS

"Cook's Wines, Cook's Sparkling Wines, Chase-Limogere, Cribari Wines[,] Dunnewood Wines, Vintner's Choice

```
                    "SCHEDULE B
                    "TERRITORY
               [areas, counties, or state]
     "County of Ashtabula"
     The effect of this notification was purportedly to divest
appellee of its distribution rights for Guild products in
Mahoning, Trumbull and Columbiana Counties, while permitting it
to retain them in Ashtabula County.
     On February 12, 1992, appellee instituted the present
action for declaratory judgment and injunctive relief in the
Mahoning County Court of Common Pleas, seeking a determination
that, notwithstanding the agreements of September 25, 1991 and
January 31, 1992, a franchise relationship between appellee and
Canandaigua had been created by operation of law pursuant to
R.C. 1333.83, and that Canandaigua's attempt to terminate
appellee's rights violated R.C. 133.82 et seq.
     On February 14, 1992, Canandaigua filed a motion to
dismiss the action.  On March 13, 1992, the trial court granted
the motion.  On June 11, 1992, the Court of Appeals for
Mahoning County reversed and remanded, concluding that a
franchise relationship had been established between Canandaigua
and appellee and that the interest of Ohio in regulating the
sale of alcoholic beverages rendered invalid any agreement
vesting jurisdiction in another state to determine rights and
responsibilities arising under Ohio law.  The court therefore
did not address the challenge advanced by Canandaigua under
Section 15(D), Article II of the Ohio Constitution regarding
the 1990 amendment to R.C. 1333.87, which vested exclusive
jurisdiction over such disputes in Ohio courts.
     The cause is now before this court pursuant to the
allowance of a motion to certify the record.


     Comstock, Springer & Wilson and Marshall D. Buck, for
appellee.
     Jones, Day, Reavis & Pogue, John W. Edwards II, Kathleen
B. Burke and John M. Majoras, for appellants Canandaigua Wine
Company, Inc. and Gene Minardi.
     DiBlasio, Flask & Associates and H.A. DiBlasio, for
appellant Ohio Wine Imports Co., Inc.
     Buckingham, Doolittle & Burroughs and Orville L. Reed III;
J. Richard Lumpe and Timothy J. Bechtold, urging affirmance for
amicus curiae, Wholesale Beer and Wine Association of Ohio.

     Per Curiam.     The threshold question presented by the
instant action concerns whether a franchise relationship exists
between the appellee and Canandaigua.  Resolution of this issue
requires consideration of R.C. 1333.83.  At the relevant time,
it provided:
     "Every manufacturer of alcoholic beverages shall contract
with or offer in good faith to its distributors a written
franchise providing for, and specifying the rights and duties
of both parties in effecting the sale of the specified brands
or products of the manufacturer.  Any notice or acceptance
required to be given or made by either party to the franchise
shall be in writing and signed by the authorized representative
of the parties.  Any breach, actual or claimed, of a franchise
```

made pursuant to this section shall not be grounds for suspension or revocation of any permit or consent to import issued by the department of liquor control. When a distributor of beer or wine for a manufacturer, or the successors or assigns of the manufacturer, distributes the beer or wine for six months or more without a written contract, a franchise relationship is established between the parties, and sections 1333.82 to 1333.87 of the Revised Code apply to the manufacturer, its successor or assigns, and the distributor." (Emphasis added.) 140 Ohio Laws, Part II, 3970-3971.

The parties differ as to the meaning of this provision. Appellee (Tri County) contends that the six-month "course of dealing" franchise arising by operation of law under R.C. 1333.83 occurs only in the absence of a written agreement. Stated differently, without a written agreement, a manufacturer and distributor must engage in a course of dealing for six months in order for a franchise to be created. However, where there is a written agreement, its mere existence and not its terms creates a franchise. Appellee seeks support for this view in R.C. 1333.82(D), which states:

"'Franchise' means a contract or any other legal device used to establish a contractual relationship between a manufacturer and a distributor."

Appellant Canandaigua responds that appellee's interpretation results in an absurdity by creating a franchise relationship from the mere existence of a written agreement which clearly disclaims any such relationship. Appellant instead interprets R.C. 1333.83 to mean that a franchise relationship is created either through a six-month course of dealing or through a written agreement which expressly establishes a franchise relationship (or, at least, does not expressly disclaim the existence of such a relationship).

Appellee suggests, however, that the purpose of R.C. 1333.83 is to preclude manufacturers from abusing their superior bargaining power by triggering a franchise relationship whenever an agreement is executed between the parties. Appellee contends that the law protects distributors from unfair tactics by providing that any agreement assures an ongoing relationship between the parties and by precluding the manufacturer from terminating the relationship except for reasonable cause. See R.C. 1333.84(D).

While this latter interpretation of the motivation behind R.C. 1333.83 has some appeal, given the plain language of the statute it would be nonsensical to suggest that the very agreement which disclaims any franchise relationship is the vehicle by which such a relationship is established. Second, it would be extremely ironic if a short-term course of dealing (i.e., less than six months) without a contract will not establish a franchise relationship but a written understanding of similar duration which disclaims any such intent produces the opposite effect.

We therefore conclude that an alcoholic beverages franchise is not created by operation of law pursuant to R.C. 1333.83 through the mere existence of a written contract between a manufacturer and distributor of such products where the contract disclaims any intention to create such a relationship and the contract term is for less than six months.[1]

Inasmuch as the contract at issue does not create a franchise relationship governed by R.C. 1333.82 et seq., it is unnecessary to consider whether the forum-selection provision contained in the contract would conflict with R.C. 1333.87 or whether the 1990 amendment to R.C. 1333.87 vesting exclusive jurisdiction in Ohio courts of common pleas (143 Ohio Laws, Part I, 1278-1279) violated the single-subject requirement of Section 15(D), Article II of the Ohio Constitution.

The forum selection provision is therefore valid and jurisdiction over the present action is properly vested thereby in the courts of New York.  See Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc. (1993), 66 Ohio St.3d 173, 610 N.E.2d 987.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded for reinstatement of the trial court's judgment.

Judgment reversed and
cause remanded.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTE:
1  While inapplicable to the instant controversy, subsequent amendments to R.C. 1333.85 appear to address the situation presented herein.  R.C. 1333.85, as amended by Am.Sub. H.B. No. 725, effective April 16, 1993, provides in relevant part:

"Except as provided in divisions (A) to (D) of this section, no manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for other than just cause and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change.

"***

"(D)  If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand.  If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal.  Upon termination or nonrenewal of a franchise pursuant to this division, the distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand as set forth in division (C) of this section, and the successor manufacturer also shall compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated or not renewed by the successor manufacturer.  The value of the distributor's business that is directly related to the sale of the terminated or nonrenewed

product or brand shall include, but shall not be limited to, the appraised market value of those assets of the distributor principally devoted to the sale of the terminated or nonrenewed product or brand and the goodwill associated with that product or brand."  (Emphasis added.)